

August 31, 2020

VIA E-FILING
The Honorable Sherry R. Fallon
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801-3568

RE:   ***Acrotech Biopharma, LLC, et al. v. Fresenius Kabi USA, LLC, et al.***
      **(C.A. No. 18-cv-1533-CFC-SRF)**

Dear Judge Fallon:

Defendants Fresenius Kabi USA, LLC and Fresenius Kabi Oncology Ltd., (collectively, "Fresenius Kabi") submit this letter pursuant to the Court's August 18 Order setting a discovery teleconference for September 3, 2020 in the above-referenced matter.

Fresenius Kabi respectfully requests the Court to (i) preclude Plaintiffs from asserting claims which were not addressed in their expert's opening infringement reports yet raised as asserted claims in responsive invalidity expert reports, and (ii) strike Plaintiffs' expert Dr. Andrei Shustov's report for arguing a previously undisclosed infringement theory and for failing to review the accused product materials as part of his infringement analysis. The parties have met and conferred on both issues, and Plaintiffs did not agree to withdraw newly asserted claims raised in responsive reports nor withdraw Dr. Shustov's report.

**I.    Plaintiffs Should Only Be Permitted to Assert Claims Addressed In Its Experts' Opening Infringement Reports**

In this Hatch-Waxman litigation, Plaintiffs seek to enforce Patent Nos. 6,888,027 ("the '027 patent) and 8,825,501 ("the '501 patent"). Plaintiffs were required to submit opening expert reports on infringement on July 13, 2020. Plaintiffs did so, and identified various asserted claims and provided infringement analysis charts. Exhibit 1.[1] For the '027 patent, Plaintiffs' experts asserted only 2 out of the 63 claims in that patent — claims 37 and 41. Then, in rebuttal reports on invalidity, Plaintiffs' expert Dr. Robert Ruffolo states that two ***additional*** claims are being asserted—specifically, claims 53 and 57 of the '027 patent.

When asked at a meet and confer whether we may have missed something from Plaintiffs' opening expert reports, Plaintiffs confessed that was not the case, that they did add these two new claims in rebuttal report, and that they believe they could have added any new claims into the case that were previously in infringement contentions. That kind of head-fake is exactly what the Scheduling Order and expert report submissions were intended to avoid, and will prejudice Fresenius Kabi if allowed.

Plaintiffs should not be allowed suddenly to assert infringement for claims 53 and 57 of the '027 patent, even though their opening infringement reports did not address those claims. This is not a situation where Plaintiffs had no expert at all on infringement, or explained in any correspondence that its opening expert reports were incomplete. To the contrary, Plaintiffs'

---

[1] The Infringement Analysis Chart provided as an exhibit to Dr. Robert O. Williams' Opening Expert Report is attached hereto as Exhibit 1.

opening expert reports came with an infringement analysis chart that identified all of the asserted claims, but in which claims 53 and 57 do not appear at all. Indeed, those claims are nowhere in any expert report that Plaintiffs submitted on infringement.

Plaintiffs' argument now—that it does not need expert discovery on these claims and it can refer back to its infringement contentions—is baseless. Plaintiffs' argument conflicts with "[t]he reason for requiring expert reports[,] [which] is 'the elimination of unfair surprise to the opposing party and the conservation of resources'." *Reed v. Binder*, 165 F.R.D. 424, 429 (D. N.J. 1996). Yet the approach Plaintiffs have engaged in purposely creates unfair surprise. That is because, under Plaintiffs' view, a patent owner can game the system by issuing opening expert reports on certain claims and then later raising new claims in later rounds of expert reports that defendants could never rebut. Plaintiffs' theory would mean that *at any point*, up to and including at trial, they could pick and choose the claims from the 21 identified in its infringement contentions to focus its arguments on, even though only 2 were identified in the opening expert reports. This would make the entire expert discovery process essentially worthless.

Fresenius Kabi will be prejudiced if Plaintiffs are allowed to assert claims 53 and 57 of the '027 patent, for several reasons. *First*, because they were not in Plaintiffs' opening reports, Fresenius Kabi's responsive reports on non-infringement did not address them. So, Fresenius Kabi will not be allowed to rely on expert testimony for non-infringement on these claims because these arguments are not present in its responsive reports. *Second*, Plaintiffs' omission is not easily curable, because the originally-asserted claims 37 and 41 are ***composition*** claims, whereas the newly-added claims 53 and 57 are ***method of treating*** claims. Fresenius Kabi has already been robbed of its right to consider an expert that could have considered and timely addressed these claims if Plaintiffs had included them in opening expert reports as they should have done. *See Reckitt Benckiser, Inc. v. Tris Pharma, Inc.,* 2011 U.S. Dist. LEXIS 146631, *22 (D. N.J. Dec. 21, 2011). *Third*, even if the court allowed Fresenius Kabi to submit supplemental expert reports, Fresenius Kabi will be prejudiced "with respect to the resources which have [already] been expended in preparing this case in reliance on the expert reports that were initially served." *Id*. As to timing, additional rounds of reports would also disrupt the expert discovery schedule, where Fresenius Kabi has reply expert reports due September 28 addressing validity issues, and would now have to divert attention back to non-infringement issues for the newly-asserted claims. All this is to say that rather than result in a "conservation of resources," Plaintiffs' failure to timely assert claims 53 and 57 in their opening reports will result in the waste of resources borne entirely by Fresenius Kabi. *St. Clair Intellectual Property Consultants, Inc. v. Matsushita Elec. Indus. Co., Ltd.,* 2012 WL 1015993, at *8 (D. Del. Mar. 26, 2012) (finding that Defendants would suffer prejudice from inclusion of new theories in expert report, because Defendants will have to spend additional time and money to refute St. Clair's new theories and therefore denying leave to supplement expert report).

## II. Dr. Shustov's Expert Report Should be Stricken

In its opening round reports on infringement, Plaintiffs submitted a report by Dr. Shustov that provided his opinions on how Plaintiffs' belinostat drug formulations are made in pharmacies and hospitals. His expert report is apparently intended to address the issue of indirect infringement, arguing that Fresenius Kabi should be liable for the acts of third parties like pharmacies and hospitals. There are two problems with that approach: (i) it was not in Plaintiffs' infringement contentions, so it is a new theory that Fresenius Kabi did not have the opportunity to address; and

(ii) Dr. Shustov did not evaluate Fresenius Kabi's accused product label. Fresenius Kabi and the Court should not have to waste resources addressing these arguments in expert reports and trial.

***Previously Undisclosed Legal Theory.*** Plaintiffs needed to address what hospitals and pharmacies do because Fresenius Kabi's product is a freeze-dried ***solid***, whereas the asserted claims refer to ***liquid*** compositions including "a pharmaceutically acceptable carrier" or "which is a liquid" and/or "suitable for administration." Plaintiffs' Final Infringement Contentions asserted that the accused product "when reconstituted ***by physicians*** as instructed by Defendants' package insert, is a a [*sic*] pharmaceutical composition" and that when "***physicians … reconstitute*** the [accused] product with sterile water" it meets the limitations. Exhibit 2 (*emphasis added*). [2]

Until now, Plaintiffs focused on what a physician alone does to prepare the accused product. In fact, however, physicians do not prepare pharmaceutical products for administration. Having belatedly realized this fact, Plaintiffs added for the first time in opening expert reports the argument that other third parties—not physicians on their own—might make a product covered by the asserted claims. Exhibit 3 at ¶¶ 21-23.[3] This switch from physicians alone to physicians-plus-pharmacists is a shift from a direct infringement theory (one actor infringes) to a divided infringement theory (multiple actors), and should be excluded as a new argument. *See, e.g., Pernix lr. DAC v. Alvogen Malta Operations, Ltd*., U.S. Dist. LEXIS 81419, *21 (D. Del. May 15, 2018) (precluding a patient-only infringement theory when patentee had previously only relied on a divided infringement theory). Had plaintiffs wanted to assert this new theory of infringement they were required to do so in their Final Infringement Contentions. The proper remedy is to strike the new contentions about pharmacists that Plaintiffs did not raise in their infringement contentions:

> '[I]nfringement contentions must set forth particular theories of infringement with sufficient specificity to provide defendants with notice of infringement […]' *Trading Techs. Int'l, Inc. v. CQG, Inc*., 2014 U.S. Dist. LEXIS 127615 (N.D. Ill. Sept. 10, 2014). As such, infringement contentions are considered to be 'initial disclosures' under Federal Rule of Civil Procedure 26(a). *See* United States District Court for the District of Delaware, Default Standard for Discovery § 4(a). A failure to make a disclosure under Rule 26(a) 'may lead to exclusion of the materials in question' under Rule 37(c)(1). *Lambda Optical Sols., LLC v. Alcatel-Lucent USA Inc*., 2013 U.S. Dist. LEXIS 59035 (D. Del. Apr. 17, 2013). In relevant part, Rule 37(c)(1) provides that '[i]f a party fails to provide information ... as required by Rule 26(a) ..., the party is not allowed to use that information ....'

*Cosmo Techs., Ltd. v. Lupin Ltd.,* 2017 U.S. Dist. LEXIS 149027, *4 (D. Del. Sep. 14, 2017). *See also*, *Parallel Networks Licensing, LLC v. Microsoft Corp.*, 2017 U.S. Dist. LEXIS 59342, *7-*8 (D. Del. Apr. 10, 2017) (precluding patentee from arguing defendant "makes and sells the [accused] product by instructing its customers to obtain, install, and configure both components in an infringing manner" because the argument was not raised in final infringement contentions); *TQ Delta LLC v. ADTRAN Inc*., 2019 WL 4346530 (D. Del. Sept. 12, 2019) ("Opening expert reports are not the appropriate time to disclose new infringement allegations.").

---

[2] Excerpt of the claims chart provided as Appendix A to Plaintiffs' Final Infringement Contentions is attached hereto as Exhibit 2.

[3] Dr. Andrei Shustov's Opening Infringement Report is attached hereto as Exhibit 3.

If Plaintiffs are allowed to make this switch in theory from the physician to a pharmacist, then Fresenius Kabi will be prejudiced for several reasons. *First*, while it is accepted that drug labels are directed to physicians, that is not at all as clear for pharmacists—a point of fact that Fresenius Kabi would have explored during fact discovery if Plaintiffs had disclosed this new theory in its infringement contentions. *See, Pernix*, LEXIS 81419, *21 (finding defendant prejudiced where it did not have the opportunity to seek discovery directed to a new infringement theory). *Second*, the issue is even more complicated because Dr. Shustov states that both the physician and pharmacist are involved in making the final product, and includes a reference that the pharmacist who reconstitutes the freeze-dried product does so at the direction of the physician. Exhibit 3 at ¶ 21. "The reference to 'direction or control' of third parties is a reference to the theory of 'divided infringement,' which involves a scenario where more than one actor is involved in practicing the steps of the method." *VÄlinge Innovation AB v. Halstead New Eng. Corp.,* 2017 U.S. Dist. LEXIS 185826, n. 3 (D. Del. Nov. 9, 2017). This, too, would have been the subject of further fact discovery—about whether physicians direct pharmacists or not. *Third*, this is not an easily curable problem because Fresenius Kabi did not have the opportunity to retain or work with a pharmacist to submit an expert report in response to Plaintiffs' theory as this theory was never raised in infringement contentions.

**Failure to Review Proposed ANDA Product.** Dr. Shustov's report should also be stricken in its entirety because he did not even review the accused product. He simply "assum[ed]" facts about Fresenius Kabi's accused product, including that, "like Beleodaq," it will be sold as a lyophilized powder for reconstitution. Exhibit 3 at ¶ 25. But Fresenius Kabi's proposed ANDA product, not Beleodaq, is the accused product. So any infringement inquiry must focus on the proposed ANDA product. "Under § 271(e)(2)(A), a court must determine whether, if the drug were approved **based upon the ANDA**, the manufacture, use, or sale of that drug would infringe the patent in the conventional sense." *Glaxo, Inc. v. Novopharm, Ltd.*, 110 F.3d 1562, 1569 (Fed. Cir. 1997); *see also Ferring B.V. v. Watson Labs., Inc.-Fla.*, 764 F.3d 1401, 1408 (Fed. Cir. 2014) ("In conducting this infringement analysis, the district court properly considered the ANDA itself, the materials submitted by Novopharm to the FDA, and other pertinent evidence provided by the parties.")

It is black letter law that, to show infringement, the claims must be applied not to Plaintiffs' own product, but to the accused product. "As we have repeatedly said, it is error for a court to compare in its infringement analysis the accused product or process with the patentee's commercial embodiment or other version of the product or process." *Zenith Labs. V. Bristol-Myers Squibb*, 19 F.3d 1418, 1423 (Fed. Cir. 1994). Because Dr. Shustov failed to review the accused product label, of course he could not have even compared it to the Beleodaq label, nor made any conclusions or opinions about what a physician or pharmacist could or would do in view of Fresenius Kabi's accused label. Blind reliance on assumed "facts" solely for the purpose of coming up with an opinion is improper, and justifies striking the expert report. *See, e.g., Campbell v. AMTRAK*, 311 F. Supp. 3d 281 (D.D.C. 2018) (striking expert opinion where expert assumed that plaintiff's counsel accurately characterized testimony "instead of independently reviewing that testimony himself")*; Equal Emp't Opportunity Comm'n v. Bloomberg L.P.*, No. 07-8383, 2010 U.S. Dist. LEXIS 92511, at *46 (S.D.N.Y. Aug. 31, 2010) (expert's reliance "solely on the information fed to him by [plaintiff] without independently verifying whether the information [wa]s representative undermine[d] the reliability of his analysis").

4

Respectfully submitted,

/s/ Brian E. Farnan

Brian E. Farnan

cc: Counsel of Record (Via E-Mail)