# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ACROTECH BIOPHARMA, LLC AND TOPOTARGET UK LTD., <br><br> Plaintiffs, <br><br> v. <br><br> FRESENIUS KABI USA, LLC AND FRESENIUS KABI ONCOLOGY LTD., <br><br> Defendants. | C.A. No. 18-1533-CFC-SRF <br><br>  <br><br> PUBLIC VERSION FILED: September 9, 2020 |

**LETTER DATED SEPTEMBER 1, 2020 FROM DANIEL M. SILVER, ESQ.
TO THE HONORABLE MAGISTRATE SHERRY R. FALLON**

*Of Counsel:*

William E. Solander
James R. Tyminski
Becky E. Steephenson
**VENABLE LLP**
1290 Avenue of the Americas, 20th Flr.
New York, NY 10104
wsolander@venable.com
jtyminski@venable.com
besteephenson@venable.com

McCARTER & ENGLISH, LLP
Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
Renaissance Centre
405 N. King St., 8th Floor
Wilmington, DE  19801
(302) 984-6331
dsilver@mccarter.com
ajoyce@mccarter.com

*Attorneys for Plaintiffs*

ME1 34158146v.2

Dear Judge Fallon:

Plaintiffs Acrotech Biopharma LLC and TopoTarget UK Ltd. (collectively, "Plaintiffs") submit this letter pursuant to the Court's August 18, 2020 order.

I. **Plaintiffs Should Not Be Precluded from Asserting '027 Patent Claims 53 and 57**

Dependent claims 53 and 57 of the '027 patent cover methods of treating proliferative conditions and cancer, respectively, with a chemical compound of asserted claim 37. *See* Exhibit A, Final Infringement Contentions. It is undisputed that the chemical compound depicted in claim 37 is called "belinostat." It is also undisputed that  It is also undisputed that

Defendants express surprise that Plaintiffs are still asserting claims 53 and 57 because Plaintiffs are not offering expert testimony on the ultimate issue of infringement of those claims. But there is simply no basis for precluding Plaintiffs from asserting those claims at trial simply because they were not addressed in Plaintiffs' opening expert reports. Plaintiffs are permitted to rely upon the plain and undisputed contents of Defendants' abbreviated new drug application (ANDA) and the package insert for Defendants' proposed product to establish infringement. The arguments presented in Defendants' letter are incorrect for several reasons.

First, Defendants' contention that they are prejudiced or surprised by the assertion of these claims is baseless. Plaintiffs did *not* "suddenly" assert these claims or identify them for the first time in their rebuttal expert reports. Claims 53 and 57 of the '027 patent were expressly identified in Plaintiffs' Final Infringement Contentions served on June 15, 2020. *See* Exhibit A, Final Infringement Contentions. These claims were also identified in Plaintiffs' Initial Infringement Contentions served on March 6, 2019. *See* Exhibit B, Initial Infringement Contentions. Thus, Defendants were plainly on notice that claims 53 and 57 were being asserted and cannot claim unfair prejudice or surprise. Indeed, Defendants' opening expert reports specifically included arguments as to those claims' invalidity, belying any surprise or misunderstanding.

Second, Defendants' apparent reliance upon Plaintiffs' opening expert reports for a comprehensive list of asserted claims is unreasonable. The purpose of expert reports is to put Defendants on notice of the substance of the expert testimony Plaintiffs intend to present at trial. *See* Rule 26(a)(2)(B) (requiring service of expert reports for testifying experts that include, *inter alia*, "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them"). The identification of asserted claims, on the other hand, is the purpose of infringement contentions, which in this case plainly identify claims 53 and 57 of the '027 patent. Plaintiffs' experts did not reference '027 patent claims 53 and 57 in their opening expert reports because they are not offering any opinions on the ultimate issue of infringement of those claims. This does not, and cannot, negate Plaintiffs' identification of these claims in their contentions.

Indeed, Defendants point to no legal authority requiring opening expert reports to specifically address each and every asserted claim. To the contrary, Plaintiffs are not required to present expert testimony concerning the ultimate issue of infringement for every claim. *See Union Carbide Corp. v. Am. Can Co.*, 724 F.2d 1567, 1573 (Fed. Cir. 1984). Plaintiffs "may prove infringement by any method of analysis that is probative of the fact of infringement." *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F. 3d 1363, 1372 (Fed. Cir. 2009) (internal quotations omitted). In fact, in Hatch-Waxman cases, induced infringement of method of treatment claims like claims 53 and 57 is often proved based upon the contents of the proposed generic product's package insert itself. *See, e.g., AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1060 (Fed. Cir. 2010) (generic company's knowing submission of a package insert that infringed the plaintiff's patents showed a specific intent to infringe).

Here, Plaintiffs' Final Infringement Contentions for claim 53 cite to Defendants' ANDA and package insert. *See* Exhibit A, Final Infringement Contentions. Plaintiffs state that  *Id*, For claim 57, Plaintiffs similarly cite to Defendants' ANDA and package insert and aver that *Id*. Plaintiffs will establish infringement at trial based upon this evidence without reliance on expert testimony on the ultimate issue of infringement of these claims.

Third, Plaintiffs did not present any new infringement theories or opinions in their rebuttal expert reports that Defendants would need to respond to. In their rebuttal reports, Plaintiffs' experts merely responded to Defendants' experts' arguments concerning the *validity* of claims 53 and 57. Defendants have been aware of Plaintiffs' infringement contentions concerning claims 53 and 57 based upon Defendants' ANDA and package insert since March 6, 2019, and received Plaintiffs' final contentions on June 15, 2020. If Defendants' experts were prepared to rebut those contentions with expert opinion, they could have and should have timely done so in rebuttal expert reports. There is nothing new for Defendants' experts to address about these claims.

Finally, even if Defendants have suffered any prejudice, that prejudice is of Defendants' own making and does not warrant relief from the Court. If Defendants were uncertain about the claims being asserted, Defendants could have written to Plaintiffs or requested a meet and confer *before* rebuttal expert reports were due to try to resolve the issue. Yet Defendants were silent in the six weeks between the service of opening expert reports on July 13, 2020 and the service of rebuttal reports on August 24, 2020. They chose not to contact Plaintiffs about this issue until after rebuttal reports were served. Defendants cannot now, after sitting on their hands for six weeks, complain that they are prejudiced by failing to address claims 53 and 57 in their rebuttal expert reports.

For all of the above reasons, Defendants' request to preclude Plaintiffs from asserting claims 53 and 57 of the '027 patent should be denied.

## II.    There Is No Basis for Striking Dr. Shustov's Expert Report

All of the asserted claims of the '501 patent are directed to pharmaceutical compositions.  Claim 6, for example, covers a composition consisting essentially of belinostat, free L-arginine, and a pharmaceutically acceptable excipient or carrier (e.g., water).  According to Defendants' ANDA, Defendants will ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  They will then ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  In order to administer the product to patients ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

Plaintiffs assert two major theories of infringement: one of direct infringement based on ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and one of induced and/or contributory infringement based upon ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  *See* Exhibit A, Final Infringement Contentions.  Plaintiffs' expert, Andrei Shustov, M.D., provided an expert report relevant to the second theory.  Dr. Shustov opined that Defendants' proposed product will, in fact, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  *See* Exhibit C, Shustov Report.

Defendants contend that Dr. Shustov's report should be stricken because (i) it represents a new theory not asserted in the infringement contentions and (ii) is not based upon an evaluation of Defendants' package insert for their generic product.  Defendants are wrong on both counts.

### A.  Dr. Shustov's Report Does Not Present A "New" Theory of "Divided Infringement"

Defendants' arguments concerning "divided infringement" are misplaced.  "Divided infringement" is a concept that is only relevant to the induced infringement of ***method of treatment*** claims.  *See Limelight Networks, Inc. v. Akamai Technologies, Inc.*, 134 S. Ct. 2111 (2014).  The '501 patent claims are pharmaceutical composition claims, not method of treatment claims.  These claims are infringed as soon as an infringing composition is produced, and do not require the direction of a doctor or administration to a patient.  Thus, "divided infringement" is not even implicated here.

Moreover, Plaintiffs have consistently contended that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ is an act of induced infringement since initial infringement contentions were served on March 6, 2019.  *See* Exhibit A, Final Infringement Contentions; Exhibit B, Initial Infringement Contentions.  Plaintiffs' contentions state that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  Exhibit A, Final Infringement Contentions.  Dr. Shustov opines that "[a]t the direction of the physician's prescription, a trained and experienced pharmacy technician will reconstitute the product with sterile water for injection in accordance with the instructions in the package insert.  The technician will always follow the instructions in the package insert and will not deviate from them to ensure patient safety."  Exhibit C, Shustov Report, at ¶¶ 21-22.  Whether Defendants' product is ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and certainly does not

3

constitute two different theories of infringement. Defendants' package insert encourages, if not mandates, the creation of the infringing product ▮▮▮▮▮▮▮▮ which must be performed each and every time it is administered to a patient. Indeed, both Dr. Shustov and Plaintiffs' other expert, Dr. Williams, opine that Defendants' product ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in order to be administered to a patient at all. *See* Exhibit C, Shustov Report, at ¶ 30; Exhibit D, Williams Report, at ¶ 42.

Lastly, both the contentions and the expert report indicate that a single actor (the technician at the direction of a physician or physician herself) will create the infringing product at the direction of defendants' label. Thus even if "divided infringement" was a relevant consideration for composition claims, Plaintiffs have not changed their infringement theory based on the reconstituted solution from a "single actor" theory to a "divided infringement" theory.

In sum, Plaintiffs have not changed their theory of infringement. If Defendants' had expert opinion or other evidence that, in contravention of the express instructions printed in their proposed product's package insert, their proposed product will not ▮▮▮▮▮▮▮▮▮▮ they could have presented that theory in their rebuttal expert reports. Defendants' claims of prejudice are unfounded.

### B. Dr. Shustov's Reliance Upon the Beleodaq® Package Insert Is Entirely Proper

Defendants' take issue with the fact that Dr. Shustov's testimony is based in part upon the package insert for, and real-world administration of, Plaintiffs' approved Beleodaq® product. Defendants' arguments are specious. As an initial and practical matter, Dr. Shustov opined on the use and administration of Beleodaq® because Defendants' proposed product is not FDA approved and cannot presently be sold or administered to patients. More importantly, Plaintiffs "may prove infringement by any method of analysis that is probative of the fact of infringement." *Martek*, 579 F. 3d at 1372 (internal quotations omitted). Plaintiffs' other expert, Dr. Williams, opines that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Exhibit D, Williams Report, at ¶ 38. Dr. Williams also points out that the ***Defendants*** told the FDA in their ANDA that, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* Defendants do not—and indeed cannot—dispute Dr. Williams' analysis of their package insert and the statements made in their ANDA. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dr. Shustov's opinions concerning the Beleodaq® product and its administration are plainly relevant to how Defendants' proposed product would be used if it were FDA-approved and marketed and therefore probative of infringement.

In any event, Defendants' complaint about the legal sufficiency of Dr. Shustov's opinions is not a discovery issue, but rather a *Daubert* or trial issue. Accordingly, to the extent the Court sees any merit in this argument, Plaintiffs respectfully suggest that the dispute should be referred to Judge Connolly for resolution during the *Daubert* or trial phases, and not resolved on an incomplete record through an abbreviated discovery dispute resolution procedure.

For all of the above reasons, Defendants' request to strike Dr. Shustov's report should be denied.

4

Respectfully submitted,

*/s/ Daniel M. Silver*

Daniel M. Silver (#4758)

cc:     Counsel of Record (via CM/ECF and electronic mail)

# EXHIBIT A

# REDACTED

# EXHIBIT B

# REDACTED

# EXHIBIT C

# REDACTED

# **EXHIBIT D**

# REDACTED